**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-24043-BLOOM/Elfenbein

**ROSA MAGDALY LANZA**,

Plaintiff,

v.

**HOBBY LOBBY STORES, INC.,** *et al.*,

Defendants.
_________________________________/

**REPORT AND RECOMMENDATION ON MOTION FOR CIVIL CONTEMPT**

**THIS CAUSE** is before the Court on Defendant Hobby Lobby Stores, Inc.'s ("Hobby Lobby") Motion to Hold, non-party witness, Keeving Amador Lanza ("Amador Lanza") in Civil Contempt (the "Motion"). *See* ECF No. [160]. The Honorable Beth Bloom referred the Motion to the undersigned for a Report and Recommendation. *See* ECF No. [161]. On July 14, 2026, the Court held a hearing on the Motion (the "Contempt Hearing"). *See* ECF No. [183]. For the reasons explained below, the undersigned respectfully **RECOMMENDS** that the Motion, **ECF No. [160]**, be **GRANTED**.

## I. BACKGROUND

This premises-liability action arises from Plaintiff Rosa Magdaly Lanza's ("Plaintiff") alleged slip and fall at a Hobby Lobby store on November 16, 2023. *See* ECF No. [80]. The present contempt dispute concerns non-party witness Amador Lanza. According to Hobby Lobby, Amador Lanza contacted it on or about March 3, 2026, and advised that he possessed information relevant to this lawsuit. *See* ECF No. [151] at 1. What followed was a sustained but unsuccessful effort by Hobby Lobby — and later the Court — to secure Amador Lanza's deposition testimony.

Hobby Lobby first noticed Amador Lanza's deposition for April 27, 2026, and served a subpoena directing him to appear for the deposition by Zoom. *See* ECF Nos. [151-1]–[151-2]. Although the return reflects service at Amador Lanza's residence on April 14, 2026, Amador Lanza did not attend, and Hobby Lobby obtained a Certificate of Non-Appearance. *See* ECF Nos. [151-2]–[151-3].

Hobby Lobby thereafter re-noticed Amador Lanza's deposition for June 1, 2026, and served another subpoena at the same residence. *See* ECF Nos. [151-4]–[151-5]. Amador Lanza again failed to appear, and a second Certificate of Non-Appearance followed. *See* ECF No. [151-6]. Hobby Lobby also represented that its repeated efforts to contact Amador Lanza by telephone and secure his voluntary attendance went unanswered. *See* ECF No. [151] at 1–2.

On June 2, 2026, Hobby Lobby filed a Motion to Compel the Deposition of Amador Lanza. *See* ECF No. [151]. That same day, the Court entered an Order to Show Cause. *See* ECF No. [152]. The Order recounted the two duly served subpoenas and Amador Lanza's two failures to appear, observed that Amador Lanza had neither moved to quash the subpoenas nor otherwise explained his noncompliance, and directed him either to comply with the subpoena and appear for deposition no later than June 9, 2026, or to appear in person before the Court on June 9, 2026, to show cause why sanctions should not be imposed. *See id.* at 1–2. The Order further directed Hobby Lobby to serve Amador Lanza with the Order and file proof of service. *See id.* at 2.

Hobby Lobby thereafter filed proof that the June 2 Order was served at Amador Lanza's residence. *See* ECF No. [153]. According to the process server's affidavit, the Order was served on Marco Lanza, who confirmed that he would provide the Order to Amador Lanza. *See* ECF No. [153-1]. The process server further averred that, after service, he spoke with Amador Lanza by telephone and asked whether Amador Lanza had read the documents. *See id.* Amador Lanza

responded that he had and then abruptly ended the call. *See id.*; ECF No. [156] at 2.

Amador Lanza did neither of the things required by the June 2 Order. He did not appear for deposition by June 9, 2026, and he did not attend the June 9, 2026 show-cause hearing. *See* ECF Nos. [155], [156]. At the hearing, Hobby Lobby advised the Court that Amador Lanza had not appeared for deposition and had not contacted Hobby Lobby's counsel concerning compliance with either the subpoenas or the Court's Order. *See* ECF No. [156] at 2. Because the fact-discovery deadline expired on June 9, 2026, the Court granted Hobby Lobby's Motion to Compel subject to the District Judge reopening or extending discovery. *See id.* at 2–3. Specifically, the Court ordered that, if discovery were extended, Hobby Lobby must promptly serve Amador Lanza with the June 9 Order; Amador Lanza would then have forty-eight hours after service to contact Hobby Lobby's counsel to schedule his deposition; and the deposition would have to occur within seven days after service. *See id.* at 3. In the Order, the Court expressly warned Amador Lanza that failure to comply with the Order could subject him to sanctions, "including contempt of Court." *Id.*

On June 11, 2026, the District Judge extended the discovery deadline through July 11, 2026. *See* ECF No. [158]. Hobby Lobby thereafter served Amador Lanza with the June 9 Order. *See* ECF No. [160-8]. Amador Lanza did not contact Hobby Lobby's counsel within forty-eight hours and did not appear for deposition within seven days, as the Court ordered. *See* ECF No. [160] at 2.

On June 26, 2026, Hobby Lobby filed the present Motion, asking the Court to hold Amador Lanza in civil contempt. *See* ECF No. [160]. Hobby Lobby asserted that, by that point, it had noticed two depositions, served multiple subpoenas and Court orders, attended a show-cause hearing, and incurred expenses associated with two deposition non-appearances — all without

obtaining Amador Lanza's testimony. *See id.* at 1–2. Hobby Lobby further argued that Amador Lanza's continuing noncompliance delayed discovery, caused unnecessary expense, and prejudiced Hobby Lobby's ability to prepare its defense. *See id.* at 2. No party filed an opposition to the Motion, and Amador Lanza filed no response.

On June 29, 2026, the District Judge referred the Motion to the undersigned for a Report and Recommendation. *See* ECF No. [161]. The following day, the Court entered an Order setting the Contempt Hearing for July 14, 2026. *See* ECF No. [169]. The Order required Amador Lanza to appear in person and be prepared to show cause why he should not be held in civil contempt for failing to comply with the Court's prior Orders and the subpoenas issued in this action. *See id.* at 2. The Court also directed Hobby Lobby to serve the Order on Amador Lanza and file proof of service. *See id.*

Hobby Lobby's initial return stated that the Order Setting Hearing had been served on July 10, 2026, but did not specify the method by which service was accomplished. *See* ECF No. [178]. The Court therefore ordered Hobby Lobby to file a supplemental return, identifying whether Amador Lanza had been personally served. *See* ECF No. [179]. The supplemental return confirms that, on July 10, 2026, at 8:13 a.m., the process server personally delivered the Order Setting Hearing directly into Amador Lanza's hands. *See* ECF No. [180-1]. Amador Lanza received actual, personal notice of the Contempt Hearing and of the potential contempt finding.

The Court convened the Contempt Hearing on July 14, 2026. *See* ECF No. [183]. To afford Amador Lanza an additional opportunity to appear in the event he was merely running late, the Court delayed the start of the hearing by approximately twenty minutes. Amador Lanza nevertheless did not appear. He did not contact Chambers, did not contact Hobby Lobby's counsel, dd not file a Response, and provided no explanation for his absence or his continued

noncompliance. The Court heard from Hobby Lobby and took the Motion under advisement. *See id.*

## II. LEGAL STANDARDS

"Contempt of court is the disregard of judicial authority." *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 465 (S.D. Fla. 1998); *see also Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (defining "civil contempt" as the "willful disregard of the authority" of the court). When a party fails to comply with an order of the court, the court "may use the remedy of a citation of contempt to enforce" that order. *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 980 (11th Cir. 1986); *see also Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (noting that civil contempt proceedings are brought to enforce a court order that requires a party to act in some defined manner).

A court's power to use a citation of civil contempt to compel compliance with its directives comes both from its inherent authority, *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (noting courts "have embraced an inherent contempt authority as a power necessary to the exercise of all others") (citations and quotation marks omitted); *Popular Bank*, 180 F.R.D. at 465 ("The court's power to enforce compliance with its lawful orders is inherent."), and from the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 70(e) (noting a court may hold a "disobedient party in contempt"); Fed. R. Civ. P. 37(b)(2)(A)(vii) (allowing a court to treat "as contempt of court the failure to obey any" discovery "order except an order to submit to a physical or mental examination"). Either way, "[c]ivil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses

sustained."[1] *Popular Bank*, 180 F.R.D. at 465.

"A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co.*, 484 F.3d at 1291 (emphasis omitted). "Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply." *Wellington Precious Metals*, 950 F.2d at 1529. That is because, "[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983); *see also Combs*, 785 F.2d at 983 ("[I]t is improper to impose contempt sanctions of any sort if the alleged contemnor is not able to satisfy the court's directives.").

To "succeed on the inability defense, the alleged contemnor must go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." *Wellington Precious Metals*, 950 F.2d at 1529 (citation and quotation marks omitted). Indeed, "the alleged contemnor" must "produce detailed

[1] The animating purpose behind a contempt sanction, and "the character of the relief itself," determine whether it is civil or criminal. *See Bagwell*, 512 U.S. at 828–29 (quotation marks omitted). A "contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." *Id.* at 827 (quotation marks omitted); *see also id.* (defining "civil contempt sanctions" as "those penalties designed to compel future compliance with a court order," which "are considered to be coercive and avoidable through obedience"); *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006). In contrast, a contempt sanction is criminal if it "is punitive, to vindicate the authority of the court." *Bagwell*, 512 U.S. at 828 (quotation marks omitted).

evidence specifically explaining why he cannot comply." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 740 (11th Cir. 2006). "[E]vasive and incomplete testimony will not satisfy" the alleged contemnor's "burden of production." *Wellington Precious Metals*, 950 F.2d at 1530. This is a "high standard" that courts construe "strictly." *Combs*, 785 F.2d at 984. "Even if the efforts" a party "did make were substantial, diligent or in good faith, the fact that he did not make all reasonable efforts" would prevent him from "rebut[ting] the prima facie showing of contempt." *Id.* (cleaned up).

If "the alleged contemnor" makes "a sufficient showing," however, the "burden shifts back to the initiating party" to prove "ability to comply." *Wellington Precious Metals*, 950 F.2d at 1529; *see also Combs*, 785 F.2d at 984 (noting that the party seeking to show contempt "retains the ultimate burden of proof"). The court's "focus in a civil contempt proceeding is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." *Ga. Power Co.*, 484 F.3d at 1291 (quotation marks omitted). While due process requires "a hearing in which the alleged contemnor may explain why the court should not make a contempt finding," *Watkins*, 943 F.2d at 1304, that hearing can be an ordinary civil proceeding, *see Serra Chevrolet*, 446 F.3d at 1147 ("Civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard"); *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (noting the alleged contemnor can "explain his noncompliance at a show cause hearing").

If, after hearing from the alleged contemnor, the court decides to impose civil contempt sanctions, they may be "compensatory" or "coercive." *Watkins*, 943 F.2d at 1304. When a court chooses "to impose sanctions designed to ensure compliance, the sanctions cannot be any greater than necessary to ensure such compliance." *Id.* "When fashioning a sanction to secure

compliance, a district court should consider the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* (quotation marks omitted).

## III. CERTIFICATIONS

The Court finds that Hobby Lobby has established by clear and convincing evidence that Amador Lanza violated valid, lawful, clear, and unambiguous Court orders that he had the ability to obey. *See Wellington Precious Metals*, 950 F.2d at 1529; *Ga. Power Co.*, 484 F.3d at 1291. Amador Lanza, despite actual notice and repeated opportunities to be heard, has offered no evidence of an inability to comply and has not attempted to show that he made all reasonable, good-faith efforts to comply. The record therefore warrants a civil-contempt finding and a coercive sanction calculated to secure the deposition the Court has repeatedly ordered.

### A. Hobby Lobby Established Civil Contempt by Clear and Convincing Evidence

As stated above, to establish civil contempt, Hobby Lobby must prove by clear and convincing evidence that: (1) the allegedly violated orders were valid and lawful; (2) the orders were clear and unambiguous; and (3) Amador Lanza had the ability to comply. *See Wellington Precious Metals*, 950 F.2d at 1529; *Ga. Power Co.*, 484 F.3d at 1291. Each requirement is satisfied here.

#### 1. The Court's Orders Were Valid and Lawful

The Court's June 2 and June 9 Orders were valid and lawful. *See* ECF Nos. [152], [156]. The June 2 Order invoked the Court's authority to enforce two subpoenas for deposition testimony and required Amador Lanza either to sit for deposition by June 9 or appear before the Court and explain his refusal to do so. *See* ECF No. [152] at 2. After Amador Lanza ignored both alternatives, the June 9 Order granted Hobby Lobby's Motion to Compel and, once the District

Judge extended discovery, required Amador Lanza to contact Hobby Lobby's counsel within forty-eight hours after service and complete his deposition within seven days. *See* ECF No. [156] at 3. Enforcing compliance with those discovery directives lies at the core of the Court's inherent authority and the authority conferred by the Federal Rules of Civil Procedure. *See Bagwell*, 512 U.S. at 831; *Popular Bank*, 180 F.R.D. at 465; Fed. R. Civ. P. 37(b)(2)(A)(vii), 70(e). Indeed, civil-contempt proceedings exist to enforce court orders requiring a person to act in a defined manner. *See Combs*, 785 F.2d at 980; *Chairs*, 143 F.3d at 1436. Neither Amador Lanza nor any party has challenged the validity or lawfulness of the June 2 or June 9 Orders.

**2. The Court's Orders Were Clear and Unambiguous**

The June 2 and June 9 Orders were also clear and unambiguous. *See Ga. Power Co.*, 484 F.3d at 1291. The June 2 Order gave Amador Lanza two specifically stated alternatives: comply with the subpoena and appear for deposition no later than June 9, 2026, or attend the June 9 show-cause hearing in person. *See* ECF No. [152] at 2. The Order identified the date, time, and location of the hearing and expressly advised that the purpose of the hearing was to determine why sanctions should not be imposed for Amador Lanza's failure to comply with the subpoenas. *See id.* The June 9 Order was equally specific. Once the District Judge extended discovery, Amador Lanza was required to contact Hobby Lobby's counsel within forty-eight hours after service of the Order and complete his deposition within seven days after service. *See* ECF No. [156] at 3. The Order also warned in unmistakable terms that failure to comply could subject him to sanctions, "including contempt of Court." *Id.* No uncertainty existed about what Amador Lanza was required to do, when he was required to do it, or the potential consequences of continued noncompliance. And Amador Lanza has never asserted that he misunderstood either Order.

**3. Amador Lanza Violated the Court's Orders**

The record also conclusively establishes that Amador Lanza violated both Orders. Amador Lanza did not sit for deposition by June 9 and did not appear at the June 9 show-cause hearing, in violation of the June 2 Order. *See* ECF Nos. [155], [156]. Then, after the District Judge extended discovery and Hobby Lobby served him with the June 9 Order, Amador Lanza did not contact Hobby Lobby's counsel within forty-eight hours and did not complete his deposition within seven days. *See* ECF Nos. [158], [160], [160-8]. His conduct was not a technical or partial failure to comply. He completely disregarded every affirmative directive aimed at securing his testimony. The Court's inquiry does not turn on Amador Lanza's unexpressed beliefs or subjective intentions. Rather, the question is "whether in fact [his] conduct complied with the order at issue." *Ga. Power Co.*, 484 F.3d at 1291 (quotation marks omitted). It plainly did not.

**4. Amador Lanza Had the Ability to Comply**

The record further establishes that Amador Lanza had the ability to comply. His initial contact with Hobby Lobby demonstrated that he could communicate with counsel. *See* ECF No. [151] at 1. The depositions were scheduled to occur remotely by Zoom, eliminating any apparent travel obstacle. *See* ECF Nos. [151-1], [151-4]. After service of the June 2 Order, the process server reached Amador Lanza by telephone, and Amador Lanza acknowledged that he had read the documents before abruptly ending the call. *See* ECF No. [153-1]. More importantly, Amador Lanza was served with the June 9 Order, which required only that he contact Hobby Lobby's counsel within forty-eight hours and participate in a deposition within seven days. *See* ECF Nos. [156], [160-8]. Nothing in the record suggests that he lacked the ability to communicate, he was physically unable to appear remotely, or any other circumstance made compliance impossible. Nor did he contact Hobby Lobby's counsel or the Court to request an accommodation, an

extension, a different deposition date, or any other modification.

Those facts establish a *prima facie* showing of Amador Lanza's ability to comply and shifted the burden of production to him to establish inability. *See Wellington Precious Metals*, 950 F.2d at 1529. He did not carry — or even attempt to carry — that burden. An inability defense requires "detailed evidence specifically explaining why" compliance is impossible. *Parker*, 468 F.3d at 740. The alleged contemnor must also prove that he made "in good faith all reasonable efforts" to comply. *Wellington Precious Metals*, 950 F.2d at 1529 (quotation marks omitted). That is a high standard, strictly construed, and even substantial or diligent efforts are insufficient if the alleged contemnor did not make all reasonable efforts. *See Combs*, 785 F.2d at 984. Amador Lanza has offered no such evidence. He filed no response to the Motion. He did not attend the June 9 hearing. He did not contact counsel after service of the June 9 Order. And after the July 14 hearing Order was placed directly into his hands, he did not attend the Contempt Hearing, contact Chambers, contact Hobby Lobby's counsel, or provide any explanation. *See* ECF Nos. [180-1], [183]. He has offered less than an inadequate explanation — he has offered none at all.

**5. Amador Lanza Received Due Process**

Amador Lanza's failure to attend the Contempt Hearing does not preclude a contempt finding. Civil contempt may be imposed in an ordinary civil proceeding following notice and an opportunity to be heard. *See Serra Chevrolet*, 446 F.3d at 1147; *Thomas*, 594 F.3d at 821. Amador Lanza received both. The June 30 Order expressly advised him that the July 14 hearing concerned whether he should be held in civil contempt and commanded his personal appearance. *See* ECF No. [169] at 2. The supplemental return establishes that the Order was placed directly into his hands. *See* ECF No. [180-1]. The Court then delayed the start of the Contempt Hearing by approximately twenty minutes to afford Amador Lanza an additional opportunity to appear in the

event he was running late or had difficulty finding the Courthouse. He nevertheless failed to attend or otherwise communicate with the Court. Due process required that Amador Lanza receive an opportunity to explain his noncompliance. *See Watkins*, 943 F.2d at 1304. It did not require the Court to continue convening hearings until Amador Lanza elected to participate. Amador Lanza cannot defeat civil-contempt proceedings by disregarding the very hearing at which he was permitted to present an inability defense.

Accordingly, Hobby Lobby has proven by clear and convincing evidence that the June 2 and June 9 Orders were valid, lawful, clear, and unambiguous; Amador Lanza violated those Orders; and he had the ability to comply. *See Wellington Precious Metals*, 950 F.2d at 1529; *Ga. Power Co.*, 484 F.3d at 1291. Because Amador Lanza produced no evidence of an inability to comply and no evidence of any reasonable effort to do so, he has not rebutted Hobby Lobby's *prima facie* showing. *See Parker*, 468 F.3d at 740; *Combs*, 785 F.2d at 983–84. The Motion should therefore be granted, and Amador Lanza should be held in civil contempt.

### B. A Bench Warrant with an Express Purge Provision is the Appropriate Coercive Sanction

Having concluded that Amador Lanza should be held in civil contempt, the Court must determine what sanction is necessary to secure compliance. Civil-contempt sanctions may be used either to coerce obedience or compensate the movant for losses sustained. *See Popular Bank*, 180 F.R.D. at 465; *Watkins*, 943 F.2d at 1304. Here, the principal objective is coercive: obtaining the deposition testimony that Amador Lanza has repeatedly refused to provide. A coercive sanction must not be greater than necessary to secure compliance. *See Watkins*, 943 F.2d at 1304. In fashioning the sanction, the Court should consider "the character and magnitude of the harm threatened by continued contumacy" and the probable effectiveness of the proposed sanction. *Id.* (quotation marks omitted). Both considerations support the issuance of a bench

warrant.

*First*, the harm caused by Amador Lanza's continued defiance is substantial. His refusal has already resulted in two failed depositions, repeated service efforts, motion practice, two hearings, unnecessary expenses, and delay. It has also impaired Hobby Lobby's ability to obtain the testimony of a witness who affirmatively contacted Hobby Lobby and represented that he possessed relevant information. Most fundamentally, Amador Lanza's conduct has frustrated the Court's ability to enforce its lawful orders. *See Popular Bank*, 180 F.R.D. at 465.

*Second*, the pattern of noncompliance demonstrates that another order or warning is unlikely to secure compliance. Amador Lanza failed to appear for two subpoenaed depositions; failed to comply with the June 2 Order directing him to appear for deposition or attend a show-cause hearing; failed to attend the June 9 show-cause hearing; failed to comply with the June 9 Order directing him to contact Hobby Lobby's counsel and complete his deposition; failed to respond to the present Motion; and failed to attend the Contempt Hearing after being personally served with the hearing Order. Thus, subpoenas, repeated service, direct warnings, and Court orders have not caused Amador Lanza even to contact counsel or Chambers.

A monetary fine is also unlikely to secure compliance. Amador Lanza is a non-party witness with no demonstrated stake in the outcome of the litigation. Unlike a party, he does not face case-related consequences that might naturally reinforce compliance. Moreover, his response to every previous directive has been silence and absence. There is no basis to conclude that a daily monetary assessment — particularly one that would itself require enforcement and collection — would cause him to contact counsel or sit for deposition. In evaluating the probable effectiveness of a sanction, the Court need not disregard the history demonstrating that further paper directives are unlikely to work. *See Watkins*, 943 F.2d at 1304.

The undersigned therefore finds it appropriate to issue a bench warrant directing the United States Marshals Service to arrest Amador Lanza and bring him promptly before the Court. The Eleventh Circuit has recognized that a bench warrant is a traditional means of directing law enforcement "to arrest someone to ensure that he appears in court," and that courts have long issued such warrants after finding a person in contempt. *United States v. Phillips*, 834 F.3d 1176, 1181–83 (11th Cir. 2016). Here, the warrant is justified both as a means of bringing Amador Lanza before the Court and as an enforcement mechanism for the civil-contempt finding. Under the circumstances presented, a bench warrant is the narrowest sanction with a realistic prospect of securing compliance. Its purpose would not be to punish Amador Lanza for completed misconduct or to impose a fixed penalty to vindicate the Court's authority. Instead, the warrant would secure his presence and coerce future compliance with the still-unfulfilled obligation to provide deposition testimony. *See Bagwell*, 512 U.S. at 828.

The Supreme Court has specifically recognized that, when contempt consists of a witness's refusal to obey an order to testify, "the witness may be confined until compliance." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Such confinement is civil where its purpose is to obtain testimony and the contemnor has an unqualified right to release upon compliance. *See id*. Accordingly, any detention must remain conditional upon Amador Lanza's continued refusal to comply. Amador Lanza must retain the ability to end the sanction by performing the affirmative act the Court requires. *See Shillitani*, 384 U.S. at 370–71; *Bagwell*, 512 U.S. at 827–29. Specifically, Amador Lanza should be permitted to purge the contempt by: (1) immediately contacting Hobby Lobby's counsel and providing dates on which he is available for deposition; (2) appearing for and completing his deposition at a mutually agreed date and time or at a date and time set by the Court; and (3) complying with any further directive necessary to accomplish the

deposition.

## IV. CONCLUSION

For the reasons explained above, the undersigned respectfully **RECOMMENDS** that Hobby Lobby's Motion, **ECF No. [160]**, be **GRANTED**, and that:

1. Amador Lanza be **HELD IN CIVIL CONTEMPT** for violating the Court's June 2, 2026 Order to Show Cause, ECF No. [152], and June 9, 2026 Order After Show Cause Hearing, ECF No. [156];
2. Discovery be **REOPENED** for the limited purpose of permitting Hobby Lobby to take Amador Lanza's deposition;[2]
3. The District Judge **ISSUE A BENCH WARRANT** directing the United States Marshals Service to arrest Amador Lanza and bring him promptly before the Court;
4. Upon his arrest, Amador Lanza be advised of the conditions by which he may purge the contempt;
5. Amador Lanza be permitted to **PURGE** the contempt by immediately contacting Hobby Lobby's counsel, providing dates of availability, and appearing for and completing his deposition at a mutually agreed date and time or at a date and time set by the Court; and
6. Upon completion of Amador Lanza's deposition and the filing of a notice by Hobby Lobby confirming compliance, the civil contempt be deemed **PURGED**.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue

[2] The discovery deadline expired on July 11, 2026. *See* ECF No. [158].

covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on August 24, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record