**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-24043-BLOOM/Elfenbein**

ROSA MAGDALY LANZA,

Plaintiff,

v.

HOBBY LOBBY STORES, INC.,
RL MIAMI, L.P., and BALFOUR BEATTY
CONSTRUCTION, LLC, and KB
HIGHRISE SERVICE INC.,

Defendants.
_______________________________________/

**ORDER ON DEFENDANT'S *DAUBERT* MOTION**

**THIS CAUSE** is before the Court upon Defendant Hobby Lobby Stores, Inc.'s ("Defendant") *Daubert* Motion and Motion *in Limine* to Preclude Testimony of Gregory Smith, M.D., ECF No. [170] ("Motion"). Plaintiff filed a Response in Opposition, ECF No. [193]. The Court has considered the Motion, the supporting and opposing submissions, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

## I. BACKGROUND

This case arises from Plaintiff's alleged slip and fall in Defendant's store. ECF No. [80]. In her Second Amended Complaint, Plaintiff alleges there was liquid on the floor of Defendant's store, and Plaintiff stepped on the liquid, causing her to fall and suffer bodily injury. *Id.* ¶¶ 9, 12. Specifically, Plaintiff described her injuries as follows:

> Plaintiff suffered injury including a permanent injury to the body as a whole, including but not limited to pain and suffering of both a physical and mental nature, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, expense of hospitalization, aggravation of

> previously existing condition, medical and nursing care and treatment. These losses are either permanent or continuing, and Plaintiff will suffer these losses in the future.

*Id.* ¶ 17.

Plaintiff asserts five claims against Defendant: General Negligence (Count I), Negligent Failure to Maintain (Count II), Negligent Failure to Warn (Count III), Negligent Failure to Correct (Count IV), and Negligent Failure to Inspect (Count V). *See generally id*. Defendant filed its Answer and Affirmative Defenses to the Second Amended Complaint and asserted a Crossclaim against Defendants RL Miami, L.P. and Balfour Beatty Construction, LLC, claiming each was responsible for maintaining the property under a Lease Agreement. ECF No. [146].

In June 2026, Plaintiff filed her Amended Expert Witness Disclosure, ECF No. [159] ("Witness List"). The Witness List identified Dr. Greg Smith ("Dr. Smith"), who is expected to testify both as a medical expert and a life care planner. *Id.* at 1. Plaintiff explained that he will testify as an expert regarding Plaintiff's life care plan, including "the reasonable future medical care of Plaintiff, necessitated by the injuries sustained in the incident that gives rise to this case and the cost thereof; issues of general causation, specific causation, acuteness, chronicity, permanency, aggravation and the medical terminology necessary to properly convey and explain his opinions." *Id*. Dr. Smith is also expected to testify to the facts and circumstances of the incident and medical care provided to Plaintiff as it relates to his preparation of the life care plan. *Id.* at 2.

In July 2026, Defendant filed the Motion, arguing that Dr. Smith cannot properly testify on causation, relatedness, or recommendations for future care, and there is no record evidence that Dr. Smith "possesses the requisite expert credentials to testify that the incident would within a reasonable degree of medical probability give rise to 'predictions' of future medical care." ECF

No. [170] at 7. Accordingly, Defendant contends that Dr. Smith should be precluded from testifying regarding any future "estimated" or "predicted" care for Plaintiff. *Id.*

Plaintiff responds that Defendant's objections go to the weight of Dr. Smith's testimony, not its admissibility. ECF No. [193] at 2. As such, Plaintiff requests that the Court deny the Motion or, alternatively, limit any ruling to "a discrete category of care that Defendant establishes lacks a sufficient medical foundation." *Id.* at 3.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Specifically, Rule 702 requires that the proponent of a would-be expert show that it is more likely than not that the testimony: (1) will help the trier of fact, (2) is based on sufficient facts or data, (3) is the product of reliable principles and methods, and (4) reflects a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702.

Even after the 2023 amendment to Rule 702, in this circuit, to determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact at issue. *United States v. Pete*, No. 23-14112, 2024 WL 4040388, at *1 (11th Cir. Sept. 4, 2024) (citing *United States v. Ware*, 69 F.4th 830, 845-46 (11th Cir. 2023)). The Court of

Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citations and quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations and quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005) (quoting *Frazier*, 387 F.3d at 1258).

## III. DISCUSSION

Defendant argues that Dr. Smith is not qualified to testify competently regarding the matters he intends to address. ECF No. [170] at 5. Defendant points out that Dr. Smith lacks the requisite qualification in orthopedic surgery, urology, and psychiatry and has insufficient data regarding the incident. *Id.* at 5–6. Moreover, Dr. Smith's methodology is not sufficiently reliable. *Id.* at 6. Finally, Defendant argues that, because Dr. Smith's opinions are improperly drawn, they will not assist the trier of fact to understand the evidence or to determine a fact in issue. *Id.* at 7.

Plaintiff responds that Dr. Smith is qualified to offer limited life care planning and future cost testimony, as he has the requisite qualifications to conduct such an assessment and cost projection. ECF No. [193] at 5. Moreover, Plaintiff contends that Dr. Smith used a reliable, case-specific life care planning process—indeed, he used a "conventional, transparent process that can be evaluated" by Defendant. *Id.* at 6–7. Plaintiff responds that Dr. Smith's use of the word "prediction" does not render his testimony speculative, as life care plans necessarily contain projections. *Id.* at 7–8. And Defendant's challenges to individual plan components do not warrant wholesale exclusion of Dr. Smith's testimony. Plaintiff acknowledges that Dr. Smith will not offer independent causation or permanency opinions beyond the medical foundation established at trial. *Id.* at 10.

The parties agree that Dr. Smith should not testify regarding causation or permanency, ECF No. [170] at 4; ECF No. [193] at 10, and Dr. Smith agrees. ECF No. [170-4] at 45:3–5. To the extent Plaintiff's Witness List indicates to the contrary, the Court precludes Dr. Smith from testifying regarding causation and permanency. *See Thelen v. Somatics, LLC*, 156 F.4th 1115, 1132 (11th Cir. 2025) (finding that a district court did not err in excluding opinion testimony regarding causation where the individual conceded that he was not qualified to offer causation opinions).

**A. Dr. Smith's Qualifications**

The Court turns to whether Dr. Smith possesses the requisite credentials to testify as to future care. ECF No. [170] at 5. As a general matter, an expert is qualified when he has sufficient knowledge, skill, experience, training, or education to form a reliable opinion about the issue at hand. *Jones v. Novartis Pharm. Corp.*, 235 F. Supp. 3d 1244, 1251 (N.D. Ala. 2017), *aff'd in part sub nom. Jones v. Novartis Pharm. Co.*, 720 F. App'x 1006 (11th Cir. 2018). The expert must have professional experience related and relevant to the opinion that the expert seeks to offer. *Messina v. Ethicon, Inc.*, No. 620CV1170ORL40LRH, 2020 WL 13441462, at *2 (M.D. Fla. Dec. 21, 2020) (citations omitted). As such, an expert cannot testify to issues that "lie outside of his competence." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 563 (11th Cir. 1998). But the Eleventh Circuit has instructed that an expert need not be a specialist in a particular discipline to render expert opinion relating to that discipline. *McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004) ("The proffered physician need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline." (quoting *Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion*, 345 F.3d 15, 24 (1st Cir. 2003))).

Here, Dr. Smith is board certified in occupational and environmental medicine and a certified life care planner with over 40 years of experience. ECF No. [170-2] at 1. He has written on the subjects of "Functional Assessment and Work Capacity Testing" and "Determining the Validity of Intense Pain," has practiced across multiple areas of medicine, and has worked as a physician reviewer in a life care plan organization for over seven years. *Id.* at 3–5. The Court finds that Dr. Smith's lack of experience in orthopedic surgery, urology, and psychiatry does not render him unqualified to offer an opinion regarding Plaintiff's future medical needs and associated costs.

Moreover, the Court does not find that Dr. Smith had "insufficient data regarding the incident" such that he is unqualified to offer an opinion. While Defendant asserts that Dr. Smith

has "insufficient data," Defendant does not develop a basis to find such, and it is "well-settled that '[p]erfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.'" *Michaels v. Sasser's Glass Works Inc.*, 662 F. Supp. 3d 1223, 1243 (S.D. Fla. 2023), *aff'd*, 2025 WL 588648 (11th Cir. Feb. 24, 2025) (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)). But more significantly, the record reflects that Dr. Smith reviewed records related to the incident and, in preparing his report, he represents that he reviewed nearly 1,700 pages of records covering doctors' visits from May 2022 to January 2026. ECF No. [170-3] at 3. Those records include those from November 16, 2023, the date of the alleged incident, and dozens of additional records from the days immediately after the alleged incident. *Id*. at 3–5. He describes that Plaintiff "fell at Hobby Lobby because the floor was wet[,]" displaying a solid grasp of the basic contours of the incident. *Id.* at 7. Accordingly, the Court finds that Dr. Smith possesses the requisite qualifications to testify to future care and associated expenses for Plaintiff.

**B. Reliability of Dr. Smith's Methodology**

Defendant argues that Dr. Smith's methodology is insufficiently reliable and his report and proposed testimony do "not set forth a reliable foundation for his proposed testimony and opinions" insofar as Dr. Smith "does not provide concrete information on the methodologies he applied to formulate his conclusions." ECF No. [170] at 6. Instead, there is a reasonable probability that Dr. Smith relied on subjective interpretation. *Id*.

Plaintiff responds that Dr. Smith's methodology is robust and easily discernable from the life care plan. ECF No. [193] at 6–7. Nothing raised by Defendant shows the life care plan to be "methodologically unreliable;" instead, Defendant's arguments are "appropriate trial issues." *Id.* at 7. Moreover, Defendant's argument that Dr. Smith improperly relies on other medical professionals' records is unavailing, as that is standard practice in life care planning. *Id*.

At the second step of the *Daubert* analysis, the Court assesses whether the methodology used to reach the conclusion is sufficiently reliable. *Rink*, 400 F.3d at 1291–92. "In order to be admissible, an expert's testimony must be based on 'more than subjective belief or unsupported speculation.'" *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996) (quoting *Daubert*, 509 U.S. at 590). There should be "[s]cientific method; good grounds and appropriate validation." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005). An expert must explain the methodologies and principles that support his opinion; he cannot simply assert a "bottom line" conclusion. *Queen v. W.I.C., Inc.*, No. 14-CV-519-DRH-SCW, 2017 WL 3872180, at *3 (S.D. Ill. Sept. 5, 2017) (quoting *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010)).

Here, Dr. Smith's conclusions and opinions are based upon Plaintiff's medical records, interviews with Plaintiff and one of Plaintiff's medical providers, Social Security Administration data regarding life expectancy, databases used in preparing the Medical Cost table, and a range of other references relevant to life care planning. *See* ECF No. [170-3]. Dr. Smith's report specifically addresses whether the theory or techniques underpinning his report can be tested, whether the science he relies upon has been peer-reviewed, whether the error rate is acceptable, whether the methodology applied enjoys widespread acceptance, and whether the opinion is relevant to the issue. *Id.* at 51–52.

Furthermore, reliance on records from treating providers is standard in the life care planning field and not grounds for inadmissibility. *See, e.g.*, *Sims v. BMW of N. Am. LLC*, No. 6:22-CV-1685-PGB-UAM, 2025 WL 714027, at *1 (M.D. Fla. Mar. 5, 2025) (explaining that life care planners "necessarily rely on physicians' recommendations." (citations omitted)); *In re Wright Med. Tech. Inc., Conserve Hip Implant Prod. Liab. Litig.*, 127 F. Supp. 3d 1306, 1325

(N.D. Ga. 2015) ("It is commonly accepted that medical records and statements by a patient's treating physician are materials upon which testifying medical experts may reasonably rely."). The Court finds the anticipated testimony associated with Dr. Smith's life care plan is sufficiently reliable to satisfy the second step of the *Daubert* inquiry.

**C. Whether Dr. Smith's Opinions Will Assist the Trier of Fact**

Defendant argues that because Dr. Smith's opinions are improperly drawn, they will not assist the trier of fact to understand the evidence or determine a fact that is at issue. ECF No. [170] at 7. Specifically, Defendant contends that Dr. Smith should be barred from testifying (i) "that the alleged incident caused a need for any future care for Plaintiff" or (ii) "that any future medical treatment is related to the incident." *Id.*

Plaintiff responds that Dr. Smith's use of the word "prediction" does not render his testimony speculative, as life care plans necessarily contain projections. ECF No. [193] at 7–8. Plaintiff explains that Dr. Smith's testimony will cover the limited ground that "certain future medical services are reasonably anticipated and have projected costs." *Id.* at 8.

The Court agrees with Plaintiff. Defendant's essential argument is that, insofar as Dr. Smith is unqualified and his opinions are based on improper methodology, he cannot assist the trier of fact. However, the Court has already determined that Dr. Smith is qualified, and his opinions are based on standard life care planning methodologies that are well-documented in his life care plan. Moreover, the Court finds that his testimony would directly aid a factfinder in determining the nature and cost of Plaintiff's future medical needs, an issue for the jury to determine. And "[w]ithout the assistance of expert testimony, jurors may lack a frame of reference to know what future treatments Plaintiff might need and how much such treatments will cost." *Hoyle v. Mitchell*, No. 1:22-CV-00488-SEG, 2024 WL 6861907, at *7 (N.D. Ga. June 21, 2024). Dr. Smith's life care planning and future cost testimony is relevant and admissible under Rule 702.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [170]**, is **GRANTED IN PART AND DENIED IN PART.** Dr. Smith is precluded from testifying as to causation or permanency. Dr. Smith is permitted to testify as to anticipated life care planning and future costs.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 2, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record