**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-24043-BLOOM/Elfenbein**

ROSA MAGDALY LANZA,

Plaintiff,

v.

HOBBY LOBBY STORES, INC.,
RL MIAMI, L.P., and BALFOUR BEATTY
CONSTRUCTION, LLC, and KB
HIGHRISE SERVICE INC.,

Defendants.
_______________________________________/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant RL Miami, L.P.'s ("RL Miami") Motion for Summary Final Judgment on Plaintiff's Amended Complaint, ECF No. [173] ("Motion"). Plaintiff Rosa Magdaly Lanza ("Lanza") filed a Response in Opposition, ECF No. [189],[1] to which RL Miami filed a Reply, ECF No. [196]. The Court has considered the Motion, the submissions in support and in opposition, the record, and is otherwise fully advised. For the reasons that follow, RL Miami's Motion is denied.

## I. BACKGROUND

In this premises liability action, Plaintiff alleges she was a customer and lawfully present business invitee at the Hobby Lobby store in Miami, when she slipped and fell on liquid on the floor. *See generally* ECF No. [80]. As of November 16, 2023, RL Miami maintained and operated

[1] Plaintiff's Response totals 25 pages of argument, *see* ECF No. [189], which exceeds the 20 pages permitted by Local Rule 7.1(c)(2). Where a litigant fails to abide by the Local Rules, the court may refuse to consider the pages exceeding the 20-page limit. *See, e.g.*, *Gomez v. Lozano*, No. 09-22988-CIV, 2010 WL 11505113, at *2 (S.D. Fla. Dec. 30, 2010). In the interest of fairness, the Court will only consider the first 20 pages of Plaintiff's Response.

the common areas of the shopping center known as River Landing, located in Miami. ECF No. [172] ¶ 1; ECF No. [190] ¶ 1. As of that date, Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") had possession and control of the Hobby Lobby store located within River Landing. ECF No. [172] ¶ 2; ECF No. [190] ¶ 2. The Lease Agreement between RL Miami and Hobby Lobby states that Hobby Lobby "shall maintain and repair . . . the interior of the Leased Premises." ECF No. [172] ¶ 4; ECF No. [190] ¶ 4. Thus, on November 16, 2023, Hobby Lobby was responsible for the interior of the Hobby Lobby store, and it was Hobby Lobby's responsibility to keep aisles closed if necessary for customer safety. ECF No. [172] ¶¶ 5, 6; ECF No. [190] ¶¶ 5, 6.

On the morning of November 16, 2023, prior to the opening of the Hobby Lobby store, Hobby Lobby employees contacted RL Miami's property manager, Edrin Janvier, to request cleaning services after heavy overnight rainfall caused water intrusion inside the store. ECF No. [172] ¶ 7; ECF No. [190] ¶ 7. RL Miami sent a cleaning crew who mopped the affected area of the store. *Id*. The parties dispute whether the cleaning crew "completely dried the affected area of the store." *Id*. Plaintiff asserts that Hobby Lobby's corporate representative, Jose Lopez, testified that he was not satisfied that the store was safe to open without barricades and explained that, although the area had been mopped and dried, there remained a possibility that water would continue coming out, which is why barricades were left in place. ECF No. [190] ¶ 7. After RL Miami's cleaning crew attended to the affected area of the Hobby Lobby store, barriers were placed around the impacted aisles to restrict public access as a precautionary measure. ECF No. [172] ¶ 8; ECF No. [190] ¶ 8. RL Miami contends that its employees left the store after attending to the floors. ECF No. [172] ¶ 17. As a result, RL Miami had no employees in the store at the time of Plaintiff's incident. *Id*.[2]

[2] Plaintiff explains that it is unknown to her whether RL Miami had any employees in the store at the time of Plaintiff's fall. ECF No. [190] ¶ 17. Accordingly, she disputes RL Miami's assertion. *Id*. Plaintiff points

On November 16, 2023, Plaintiff visited the Hobby Lobby store with her niece, Sara Lanza. ECF No. [172] ¶ 9; ECF No. [190] ¶ 9. While inside the store, Plaintiff claims she stepped on a liquid on the floor, which caused her to slip and fall. ECF No. [172] ¶ 10; ECF No. [190] ¶ 10. While walking through the Hobby Lobby store immediately prior to her fall, Plaintiff did not see water in any part of the store. ECF No. [172] ¶ 11; ECF No. [190] ¶ 11. Plaintiff does not know how much water was on the floor of the aisle in which she claims she fell, does not know how the water got onto the floor, and does not know when the water got onto the floor. ECF No. [172] ¶¶ 12–14; ECF No. [190] ¶¶ 12–14. The water in which Plaintiff slipped and fell was not dirty or sticky. ECF No. [172] ¶ 15; ECF No. [190] ¶ 15. Plaintiff testified that there were no signs along the aisles before she fell. ECF No. [190] ¶ 36.

The parties dispute whether the transitory foreign substance on which Plaintiff claims to have slipped and fallen did or could have entered the store through an exterior wall. RL Miami contends it did not. ECF No. [172] ¶ 16. Plaintiff points out that Hobby Lobby's corporate representative testified that on four separate occasions that water entered the store through the exterior wall. ECF No. [190] ¶ 16. The corporate representative further testified that, depending on the amount of rain, the water would travel further into the store and into multiple aisles, meaning the water could have traveled from one area of the store to another, and that water had entered the store through a wall on the morning of Plaintiff's fall. *Id.*

Regarding notice, once in November 2020, twice in November 2022, once in January 2023, once in April 2023, and once in November 2023, Hobby Lobby informed RL Miami's property

---

out that RL Miami does not cite to record evidence supporting its assertion that it had no employees in the store at the time of Plaintiff's fall, and, as such, the assertion should not be deemed admitted. *Id.* However, logically, if RL Miami's employees in the store—i.e., the cleaning crew—had left the store, it stands to reason that RL Miami had no employees remaining in the store. Accordingly, the Court accepts this assertion as true.

management representative, Edrin Janvier ("Janvier"), of wall leaks into the Hobby Lobby store. *Id.* ¶¶ 21–24, 27; ECF No. [195] ¶¶ 21–24, 27. Furthermore, on October 31, 2023, approximately two weeks before Plaintiff's fall, Hobby Lobby notified Janvier that it had rained that morning, that the store found "water coming from under the frame shop's floor boards," that the condition "only happens when it rains," and that it had "happened before." ECF No. [190] ¶ 26; ECF No. [195] ¶ 26.

RL Miami contends that there is no record evidence regarding the origin of the foreign substance on the floor, how long it had been there, or of any roof leak having caused the water on the floor. ECF No. [172] ¶¶ 18, 19. As Plaintiff points out, however, Hobby Lobby's corporate representative testified that on four separate occasions, water entered the store through the exterior wall and that, depending on the amount of rain, the water would travel further into the store and into multiple aisles. ECF No. [190] ¶ 18. He testified that water had entered the store through a wall on the morning of Plaintiff's fall. *Id.* Moreover, Plaintiff points out that Hobby Lobby's employee, Ericka Hines ("Hines"), testified that the water that leaked into the store on the morning of Plaintiff's fall was located at or near the restroom area, and the restroom area is about 6 to 7 aisles away from the aisle in which Plaintiff fell. *Id.* ¶¶ 28–30. Plaintiff points out that Hines testified that, after maintenance cleaned the water off the floor, barricades were placed due to the risk of water seeping underneath the aisles, blocking about 6 or 7 aisles. *Id.* ¶¶ 31–32. Thus, Plaintiff contends that it may be concluded that Plaintiff was in the zone of barricaded aisles across which water could seep. *Id.* ¶ 33. RL Miami asserts that "[w]hether water 'could' seep is [ ] speculative[.]" ECF No. [195] ¶ 33.

Hobby Lobby employee, Yuniesy Perez, testified that she had been told the water was from the wall, and that when it rained heavily, water leaked underneath the aisles. ECF No. [190] ¶ 34.

Moreover, Hobby Lobby's corporate representative, Jose Lopez, testified that water had entered the aisle where Plaintiff fell on a prior occasion. *Id.* ¶ 35.

In October 2024, the instant lawsuit was removed to this Court. ECF No. [1]. Plaintiff's Second Amended Complaint asserts five claims against RL Miami: General Negligence (Count VI), Negligent Failure to Maintain (Count VII), Negligent Failure to Warn (Count VIII), Negligent Failure to Correct (Count IX), and Negligent Failure to Inspect (Count X). ECF No. [80].

In the Motion, RL Miami argues that it cannot be liable for Plaintiff's alleged incident for two reasons: (1) there is no evidence that the water on the floor at the time of Plaintiff's fall came through an exterior wall; and (2) Plaintiff cannot satisfy the requirements of Florida's transitory substance statute requiring a plaintiff to prove actual or constructive knowledge of a transitory substance and an opportunity to have remedied it. ECF No. [173] at 2. Therefore, no reasonable jury could find RL Miami liable. *Id.*

Plaintiff responds that the record evidence "creates genuine disputes of material fact regarding actual notice, constructive notice, recurrence, foreseeability, control, duty, breach, causation, and the reasonableness of [RL Miami]'s response." ECF No. [189] at 1–5. As such, summary judgment should be denied. *Id.* at 5.

RL Miami replies that its Motion is premised on a simple proposition:

> The store manager testified the floor had been dried before store opening, and periodic inspection that day prior to Plaintiff's alleged slip and fall revealed no water entering the store through the wall. Accordingly, whatever Plaintiff may have slipped on was not water intruding through the wall. Since water intrusion through the wall is the only basis for alleged liability by [RL Miami], [RL Miami] cannot be liable for Plaintiff's incident.

ECF No. [196] at 1. Accordingly, summary judgment is appropriate. *Id.* The Motion is now ripe for review.

## II. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* FED. R. CIV. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (citation omitted); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Liberty Lobby, Inc.*, 477 U.S. at 252.

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element

of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## III. DISCUSSION

### A. Whether RL Miami Can Be Liable for the Condition of Premises Controlled and Operated By Hobby Lobby as a Tenant in Possession

RL Miami argues that because Hobby Lobby was the tenant in possession pursuant to a written lease and had full knowledge of the risk of water intrusion on the day of the alleged incident, RL Miami had no duty to Plaintiff. ECF No. [173] at 4–7.

Plaintiff responds that the lease provisions establish only that Hobby Lobby was responsible for the *interior* of the premises, assigning the landlord responsibility for exterior and structural components. ECF No. [189] at 9–10. Here, "[t]he evidence attributes the water to rain-related intrusion from exterior walls, under floorboards, under aisles, and/or building components that the lease assigns to the landlord." *Id.* at 20. Thus, RL Miami "is not entitled to summary judgment merely by pointing to Hobby Lobby's responsibility for ordinary interior maintenance." *Id.* at 10.

RL Miami replies that it had turned over control of the store premises to Hobby Lobby, "who maintained possession and control of the store premises." ECF No. [196] at 2–3. As such, RL Miami was not responsible for Hobby Lobby's operation of the store. *Id.* at 3. Insofar as RL Miami dried the intrusion, no further water intrusion occurred prior to Plaintiff's incident, and Hobby Lobby reported no further problem, then RL Miami cannot be held liable. *Id.*

"Under Florida law, 'the duty to protect third persons from injuries on the premises rests not on legal ownership of the premises, but on the rights of possession, custody, and control of the premises.'" *Johnson v. Garrett*, 386 So. 3d 1023, 1027 (Fla. 6th DCA 2024) (quoting *Wal-Mart Stores, Inc. v. McDonald*, 676 So. 2d 12, 15 (Fla. 1st DCA 1996)). Where a lease agreement is involved:

> [T]he legal relationship (including possession and control of the lessor over the property) between the owner and the property will not necessarily be totally severed. The extent of responsibility for injuries occurring on the property during the term of the lease will depend upon the extent the owner maintains a possessory interest or control over the instrumentality or land which contains a defect which is alleged to have been a proximate cause of the injuries suffered by a plaintiff.

*Haines v. Dania Corner, Inc.*, 920 So. 2d 1289, 1290 (Fla. 4th DCA 2006) (quoting *Russ v. Wollheim*, 915 So. 2d 1285, 1287 (Fla. 2d DCA 2005)). "Generally, control and responsibility are issues of fact to be resolved by the jury." *Fla. Power & Light Co. v. Morris*, 944 So. 2d 407, 410 (Fla. 4th DCA 2006). And "[d]espite a contract, a party who exercises control over property may have a duty to maintain a premises in a reasonably safe condition." *Lee Cnty. Dep't of Transportation v. Island Water Ass'n, Inc.*, 218 So. 3d 974, 977 (Fla. 2d DCA 2017) (citation omitted). However, where it is clear that possession and control of the property have been transferred to a tenant, the duty of a landlord is "to exercise reasonable care in repairing dangerous defective conditions upon the tenant giving notice of their existence, unless waived by the tenant."

*Youngblood v. Pasadena at Pembroke Lakes S., Ltd.*, 882 So. 2d 1097, 1098 (Fla. 4th DCA 2004) (citing *Mansur v. Eubanks*, 401 So. 2d 1328, 1329–30 (Fla. 1981)).

The Court does not find summary judgment warranted on this basis, as a jury could reasonably conclude RL Miami exercised sufficient control to implicate a duty of care to Plaintiff. The lease agreement assigns responsibility for maintaining the exterior of the building to RL Miami, ECF No. [172-1] ¶ 10, and to the extent Plaintiff's injury was proximately caused by a defect in maintenance of the exterior, RL Miami may be liable. Furthermore, the law is clear that "[t]wo or more parties may share control over land or business premises." *Metsker v. Carefree/Scott Fetzer Co.*, 90 So. 3d 973, 977 (Fla. 2d DCA 2012). This is true notwithstanding what is written into a contract. *Island Water Ass'n, Inc.*, 218 So. 3d at 977. Thus, a jury could find that—in this context where an exterior defect is alleged to have caused a defect in the interior—RL Miami possessed the requisite level of control to be liable for injuries stemming from intruding water.

The Court finds the case of *Hale v. Sleiman Enters.*, 434 So. 3d 558 (Fla. 5th DCA 2026), instructive. In *Hale*, a pizza restaurant operated on premises leased from the defendant. *Id.* at 559. The plaintiff, an employee, slipped on water that had leaked from a defect in the roof, which the defendant controlled. *Id.* The defendant argued "that the leak originated from a defective hood vent and that the lease required [the tenant] to maintain the vent[,]" and as such, the defendant owed no duty to the plaintiff. *Id.* The trial court granted summary judgment in favor of the defendant, and the Florida Court of Appeals reversed. *Id.* It explained that the defendant owed the employee "a duty of reasonable care under the circumstances presented here." *Id.* The lease provision did not relieve the defendant of its duty. *Id.* As applied here, the court's conclusion supports that, even where a tenant controls a portion of the premises that is alleged to be directly

responsible for the ensuing injury, an owner may still be found to have owed and breached a duty of care to the injured party if it controls a defective portion of the property.

Similarly, Hobby Lobby, as a tenant, controls and is responsible for the interior of the Hobby Lobby store. ECF No. [172] ¶ 4; ECF No. [190] ¶ 4. However, RL Miami, the owner of the property, controlled what is alleged to be the defective portion of the property that allowed water in the store. ECF No. [172-1] ¶ 10. Moreover, by sending in its cleaning crew, RL Miami functionally took on more control for the interior than the lease agreement contemplated, and Florida law focuses on actual control, not simply the terms of a contract. *Island Water Ass'n, Inc.*, 218 So. 3d at 977. Thus, just as the court found in *Hale*, the Court finds it plausible that a duty of care is implicated here, and as such, summary judgment is not warranted on the basis that RL Miami lacked the requisite control over the premises.

### B. Whether Plaintiff Can Establish RL Miami's Actual or Constructive Knowledge of Water on the Floor

RL Miami argues that even if it owed a duty of care to Plaintiff, "there is no record evidence this Defendant had actual or constructive knowledge of the alleged substance." ECF No. [173] at 7. As to actual knowledge, Plaintiff did not see water on the floor prior to the fall, RL Miami had no employees in the store at the time of the incident, and there is no evidence that any employee of RL Miami was aware of the substance on which she allegedly fell. *Id.* at 7–8. As to constructive knowledge, RL Miami had fully removed the water, Plaintiff cannot establish when, how, or why the water was on the floor, and it cannot be established that the water was entering through an exterior wall. *Id.* at 11. Moreover, RL Miami's employees had left the Hobby Lobby store prior to the alleged incident. *Id.*

Plaintiff responds that RL Miami had constructive notice due to the recurring nature of the water intrusion. ECF No. [189] at 16–18. Moreover, RL Miami had actual notice because it was

told of the water intrusion the morning of the fall and took insufficient corrective measures. *Id.* at 18.

RL Miami replies that the case does not rise or fall on the issue of constructive notice. ECF No. [196] at 6. Instead, it hinges on the undisputed evidence that "the storm water that entered the Hobby Lobby store during the night had been mopped up and the floor was dry before the store opened for business, and no further water was coming through the wall." *Id.*

As a general matter, negligence claims have four elements: duty, breach, causation, and damages. *Peoples Gas Sys. v. Posen Constr., Inc.*, 322 So. 3d 604, 612 n.8 (Fla. 2021). In actions arising from a plaintiff's slip and fall on a transitory substance in a business establishment, proof of the breach element is "statutorily constrained" by Florida Statute § 768.0755. *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. 3d DCA 2017).

Florida Statute § 768.0755 provides:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

Fla. Stat. § 768.0755(1).

"Actual knowledge" of a dangerous condition exists when the business or one of its agents "knows of or creates the dangerous condition." *Dolgen Corp., LLC v. Doty*, 383 So. 3d 864, 867 (Fla. 5th DCA 2024) (citations omitted). Importantly, a "business owner's knowledge that circumstances might create a foreseeable risk . . . is not equivalent to actual knowledge of the existence of the specific dangerous condition that led to the fall and therefore that knowledge does

not satisfy the actual knowledge requirement." *Kozlowski v. Wal-Mart Stores E., LP*, No. 5:21-CV-261-ACC-PRL, 2023 WL 4350567, at *8 (M.D. Fla. May 19, 2023) (internal quotations and citation omitted).

Regarding constructive notice, "[t]o prove a dangerous condition occurred with regularity, the plaintiff must provide evidence of recurring or ongoing problems that could have resulted from operational negligence or negligent maintenance." *Publix Super Markets, Inc. v. Safonte*, 388 So. 3d 32, 36 (Fla. 4th DCA 2024) (quotation and citation omitted). Establishing constructive knowledge requires clearing a high bar—the plaintiff must prove that the recurring hazard actually caused her injury and that the hazard occurred regularly, rather than from time to time. *See, e.g.*, *Speedway, LLC v. Cevallos*, 331 So. 3d 731, 735 (Fla. 4th DCA 2021); *Levine v. Costco Wholesale Grp.*, No. 22-80896-CV, 2023 WL 3600657, at *5 (S.D. Fla. Mar. 6, 2023) ("none of the testimony, even if taking as true that some of the employees had seen spills on the floor up to ten times, could support a reasonable juror in finding that Defendant was on constructive notice of any alleged dangerous condition"); *Fonseca v. Wal-Mart Stores, E., LP*, No. 18-62768-CIV, 2019 WL 7371813, at *3 (S.D. Fla. Sept. 23, 2019) ("[T]he Court concludes . . . that Ms. Telleria's 'from time to time' admission does not constitute evidence of 'regularity.'").

As an initial matter, the Court acknowledges that there is no evidence of *actual* knowledge here. There is no evidence that any of RL Miami's employees were in the store at the time of the alleged incident, and there is no evidence that RL Miami was notified that water had recurred. Hobby Lobby employees testified that when leaks such as this occurred, the area was routinely dried after RL Miami's cleaning crew attended to the area and was, in fact, dried on the day in question. ECF No. [189-2] at 35:2–10, 71:4–20. Thus, Plaintiff cannot establish that RL Miami had actual knowledge of the water in question at the time of Plaintiff's alleged fall.

Moreover, there is no record evidence supporting a finding of constructive knowledge based on Florida Statute § 768.0755(1)(a)—that is, constructive knowledge by way of length of time. Plaintiff does not know how long the water was present before her fall, nor does she point to record evidence otherwise establishing how long the water was present, precluding her from proceeding under Florida Statute § 768.0755(1)(a). ECF No. [172-6] at 56:14–25. Indeed, RL Miami's Statement of Material Facts notes that "[t]here is no record evidence of how long [the transitory substance] had been [on the floor]." ECF No. [172] ¶ 18. Plaintiff disputes this but points only to evidence of past leaks of which RL Miami had been notified, ECF No. [190] ¶ 18, which does not properly place RL Miami's statement that no evidence exists regarding how long the transitory substance was on the floor in dispute. Moreover, there is no evidence that "the offending liquid was dirty, scuffed, or had grocery-cart track marks running through it," or "[o]ther evidence such as footprints, prior track marks, changes in consistency, [or] drying of the liquid" that would indicate a substantial duration, as required by courts applying Florida law. *Sutton v. Wal-Mart Stores E., L.P.*, 64 F.4th 1166, 1169 (11th Cir. 2023) (collecting cases).

But the Court finds that Plaintiff could plausibly prove constructive knowledge by way of regularity, consistent with Florida Statute § 768.0755(1)(b). Plaintiff points to seven separate notices sent by Hobby Lobby to RL Miami between November 2020 and November 2023 detailing water leaks associated with defects to the exterior of the building. ECF No. [190] ¶¶ 21–27. RL Miami does not dispute receiving these notices. ECF No. [195] ¶¶ 21–27. Hobby Lobby's corporate representative testified that when it rained particularly heavily, water would enter the store through exterior walls and travel through multiple aisles. ECF No. [189-2] at 17:25–18:13, 19:13–20, 21:8–25, 26:2–8. Indeed, he testified that "every time we had heavy rain in the store there were two leaks in the . . . building." *Id.* at 17:25–18:2. He explained that the leaks happened

"every time there was, like, heavy heavy rain." *Id.* at 19:14–15. And he further explained that every time there was a leak and water intruded, Hobby Lobby reported the leaks to RL Miami. *Id.* at 23:16–17. The Court finds this plausibly sufficient to establish a regularly-occurring dangerous condition.

The Court's conclusion is consistent with the Florida Court of Appeals' reasoning in *Maryland Maintenance Service, Inc. v. Palmieri*, 559 So. 2d 74 (Fla. 3d DCA 1990). *Palmieri* was decided before § 768.0755 was enacted, but it addressed the same notice requirements codified by § 768.0755. In *Palmieri*, the defendant cleaning company would clean spills or garbage at a race track during betting hours only when notified. 559 So. 2d at 75. The jury found in favor of the plaintiffs, and the defendant cleaning company appealed, arguing in relevant part that it exercised reasonable care. *Id*. The Florida Court of Appeals affirmed the jury's verdict, finding constructive notice plausible insofar as the liquid on which the plaintiff slipped had been there for several races, and there was an ongoing problem with waste on the floor. 559 So. 2d at 76–77. Based on that constructive notice of a dangerous condition, it was a valid question for the jury whether the defendant used reasonable care. *Id.* at 77.

Here, the facts are quite analogous to *Palmieri*. RL Miami's cleaning team was sent in only when notified of a water intrusion. Still, there is evidence that water intrusion was an ongoing problem—that every time it rained heavily, water intruded, and RL Miami was notified by Hobby Lobby. Insofar as the "ongoing problem" in *Palmieri* was deemed sufficient to establish constructive notice, the Court finds that a reasonable jury could determine that the recurring water intrusion established notice.

The Court's conclusion is also consistent with case authority following the enactment of § 768.0755. In *Loren v. Once Upon a Time Group, Corp.*, the Fourth District Court of Appeals

addressed a case in which the plaintiff fell in a restaurant and was injured. 415 So. 3d 222, 228 (Fla. 4th DCA 2025). Following the trial, the jury found in favor of the plaintiff, but the trial court granted the restaurant owner's motion for directed verdict. *Id.* at 224–25. The plaintiff appealed, arguing that she had introduced sufficient evidence to submit her case to the jury. *Id.* at 225. The Fourth District Court of Appeals reversed, finding that the plaintiff had presented sufficient evidence to survive the motion for directed verdict. *Id.* at 226–27. Specifically, the court found that a jury could conclude that condensation was a recurring problem in the restaurant, in part based on a bar manager's testimony that "the air conditioning diffuser close to where the plaintiff fell had dripped 'maybe twice' in the year that he had worked at the restaurant." *Id.* at 228. The bar manager "further conceded that 'when the weather is too humid and we open the restaurant and the restaurant is quite cold inside, we have some condensation on the floor.'" *Id*. Here, too, given a certain weather condition, leaking was sufficiently common and had occurred multiple times in the past.

Here, too, during intense rains, leakage into the Hobby Lobby store occurred regularly, supporting an inference of constructive knowledge. Indeed, as noted above, Hobby Lobby's corporate representative testified that "every time we had heavy rain in the store there were two leaks in the . . . building." ECF No. [189-2] at 17:25–18:2. He explained that the leaks happened "every time there was, like, heavy heavy rain." Id. at 19:14–15.

RL Miami's cited cases do not compel a different result. RL Miami cites to *Lago v. Costco Wholesale Corp.*, 233 So.3d 1248 (Fla. 3rd DCA 2017). ECF No. [173] at 8. In *Lago*, the plaintiff fell at the entrance to a *Costco* store. 233 So.3d at 1249. The plaintiff's testimony was that it was not raining, she did not see the liquid on the floor before falling, she did not know what the liquid was, and she did not know how long the liquid had been there. *Id.* at 1251. But unlike the case

here, the plaintiff did not attempt to prove constructive notice via regularity. There was no mention of a history of the dangerous condition occurring or the frequency of those occurrences. In that regard, *Lago* is of limited instructive value here, where the question is whether plaintiff could adequately show constructive notice by way of regularity.

RL Miami similarly cites to *Duran v. Crab Shack Acquisition, FL, LLC*, 384 So.3d 821 (Fla. 5th DCA 2024). ECF No. [173] at 8–9. In *Duran*, the plaintiff slipped on a "brownish" liquid at a restaurant. 384 So.3d at 823. The plaintiff attempted to adduce evidence from which a "jury may reasonably conclude the substance was present for a sufficient length of time that [the restaurant], in the exercise of ordinary care, should have known of its existence." *Id.* at 825 (citation omitted). The trial court granted summary judgment, and the Fifth District Court of Appeals affirmed, finding that the plaintiff failed to adduce sufficient evidence to survive summary judgment, as he failed to provide "testimony of footprints, changes in consistency, or drying of any liquid" or "evidence . . . that the liquid was scuffed or polluted by other substances, such as dirt or food." *Id.* at 826. There, the plaintiff attempted to prove constructive notice by length of time, not by regularity. As such, *Duran* is not particularly instructive where the court simply did not address the issue of regularity that is present here.

In its Reply, RL Miami cites to *Silver Springs Moose Lodge No. 1199 v. Orman*, 631 So.2d 1119 (Fla. 5th DCA 1994). ECF No. [196] at 5. In *Orman*, another slip-and-fall case, the question before the court was whether the plaintiff had presented evidence "that the slippery condition existed for a sufficient period of time to place the [the defendant] on constructive notice of its existence." 631 So.2d at 1120. The plaintiff had prevailed at the trial level, and the venue owner appealed. *Id.* The Fifth District Court of Appeals found that, insofar as the plaintiff failed to provide evidence as to how the substance got onto the floor, how long it had been there, or whether

there were "smudges, streaks, tracks or foot prints in or around the liquid evidencing it was there for a sufficient period of time," there was no evidence of constructive knowledge. *Id.* at 1121. Once more, the plaintiff sought to prove constructive knowledge through length of time, so the case does not provide helpful guidance.

*Brooks v. Phillip Watts Enterprises, Inc.*, 560 So. 2d 339 (Fla. 1st DCA 1990), is instructive. In *Brooks*, a plaintiff slipped and fell near the entrance of a store on a rainy day. *Id.* at 340. The trial court found in favor of the storeowner on summary judgment, and the plaintiff appealed, arguing that she had sufficient evidence of constructive knowledge. *Id*. The First District Court of Appeals reversed, finding constructive knowledge plausible because the defendant store "had knowledge of the slippery condition of the floor when wet, and knowledge that water came in the front area of the store in rainy weather." *Id.* at 342. The store also "possessed warning cones which were usually placed in the front area of the store in rainy weather." *Id*. Here, too, RL Miami knew the floor was slippery when wet and knew that after heavy rains, water leaked in through the wall. If a jury finds that RL Miami possessed sufficient control, it could plausibly find sufficient constructive knowledge of the leak to require adequate corrective action.

### C. Whether RL Miami Used Reasonable Care

RL Miami's argues that even if it owed a duty to Plaintiff, it mopped and dried the floor prior to the store opening for business, and Hobby Lobby undertook to place barricades where needed. ECF No. [173] at 12. Thus, RL Miami acted reasonably to make the premises safe and left the premises. *Id*. Whatever water was on the floor could not have resulted from RL Miami's failure to exercise ordinary or reasonable care, so no reasonable jury could find RL Miami negligent. *Id*. Plaintiff does not directly respond to this contention. ECF No. [189].

In its Reply, RL Miami argues that no additional water came through the wall on the day in question. ECF No. [196] at 1. Because the floor had been dried of water and the Hobby Lobby

manager had periodically checked and found no further water intrusion through the wall, leakage from the storm could not have been the cause of Plaintiff's incident. *Id.* at 2.

The Court does not find that Defendant's argument provides a basis for dismissal. First, the Court finds it plausible from the record evidence that water continued to enter the store from the exterior after the cleaning crew attended to the store's floor on the morning of the incident. It is true that Hobby Lobby's corporate representative testified as follows:

> Q. Did you or Hobby Lobby staff go there after the store opened to see if any further water was coming out of the wall?
> A. Yeah, yeah, we inspected it.
> Q. Okay. And during the time the store was opened that morning was there water continuing to come out of that wall?
> A. No.

ECF No. [172-2] at 86:9–16. But that same representative testified that the reason barricades were put in the area was because "there was a possibility" of additional water intrusion—that is, because he was "not sure if the water was going to still keep coming out[.]" *Id.* at 86:5–8. That this corporate representative did not personally see additional water coming out of the subject wall in question is not dispositive. The barricades were placed in contemplation of additional water from the same exterior source, and liquid was later located in the vicinity of the initial leak—from this, a jury could reasonably conclude that additional water entered from the exterior wall.

Moreover, the Court finds it plausible that the additional water came from inadequate drying by the cleaning crew. The same corporate representative testified:

> Now, because we cannot vacuum under the counters. Because these things are huge and heavy and they have a lot of merchandise on top but there is still water under those counters. Now, a little bit of water keeps coming or dripping from under the counters that we were not able to clean because for obvious reasons.
>
> That's why we decided to close the counters, because we kept seeing water, and we cannot be there you know watching the aisles to see if it's going to drip all day. So, we can -- I cannot have a person on every aisle all day long to see if there is water, additional water coming from under the counters or not. So that's why we decided to close some of those counters with the high chance of that happening.

ECF No. [189-2] at 35:11–24. That is, there is record evidence that the water did not come directly from the wall after the cleaning crew left, but the water's origin was nonetheless the leak in the wall. Based on this, a jury could find that Plaintiff's injuries were caused by water that came from the leak in the wall and was not sufficiently cleaned by RL Miami's cleaning crew.

RL Miami cites to *Vera v. Parkwood Condo. Association, Inc.*, 436 So. 3d 1183 (Fla. 3rd DCA 2026) for the proposition that Plaintiff must "establish whether she fell because of water coming through the wall (RL Miami's potential responsibility) or some other source of accumulation (not RL Miami's responsibility)." ECF No. [196] at 4–5. In *Vera*, a plaintiff walking in her condominium unit's bathroom slipped due to water and sewage on the floor. 436 So. 3d at 1184. She contended this was a recurring issue of which the defendant condominium association was on notice. *Id*. The court found that because she fell in a place not possessed or controlled solely by the association, she needed to address whether the wastewater backup "resulted from a problem in either the wastewater pipes that were part of [the plaintiff]'s unit (and therefore her responsibility to maintain) or the condominium's sanitary stack pipes (which were the [defendant]'s responsibility to maintain)." *Id.* at 1185–86. Because the plaintiff had not produced sufficient evidence "that would support a reasonable inference that it was more likely than not that the wastewater spillage in her unit was due to a problem in the condominium's sanitary stack pipes rather than her wastewater pipes," the condominium association was entitled to summary judgment. *Id.* at 1186.

But here, there is sufficient evidence from which a jury could reasonably infer that it is more likely than not that the water came from the exterior leak. For instance, Hobby Lobby's corporate representative testified:

> So if you're asking me where that water came from that day, I will say 99.9 percent sure that was from the leak on the wall. Why because we had leak, leak water the night before and there was a lot of water that morning and the stores due to the rain the night before.

ECF No. [189-2] at 68:11–16. Similarly, there is record evidence that barricades were routinely placed specifically because some water remained beneath the counters holding merchandise after the cleaning crew's activities. For example, Hobby Lobby employee Ericka Hines testified, when asked why barricades were placed, that while "the maintenance crew came in and . . . got the water up," there was still "a possibility of water seeping." ECF No. [189-5] at 14:18–21.

The Court finds that summary judgment warranted is not warranted.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that RL Miami's Motion for Summary Judgment, **ECF No. [173]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 4, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record