**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-24043-BLOOM/Elfenbein**

ROSA MAGDALY LANZA,

Plaintiff,

v.

HOBBY LOBBY STORES, INC.,
RL MIAMI, L.P., and BALFOUR BEATTY
CONSTRUCTION, LLC, and KB
HIGHRISE SERVICE INC.,

Defendants.
_______________________________________/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant RL Miami, L.P.'s ("RL Miami") Motion for Summary Final Judgment on Crossclaim by Hobby Lobby Stores, ECF No. [174] ("Motion"). Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") filed a Response in Opposition, ECF No. [191], to which RL Miami filed a Reply, ECF No. [194]. The Court has considered the Motion, the submissions in support and in opposition, the record, and is otherwise fully advised. For the reasons that follow, RL Miami's Motion is denied.

## I. BACKGROUND[1]

[1] Hobby Lobby failed to file a responsive statement of facts. Local Rule 56.1(c) provides that, upon a party's failure to provide a responsive statement of facts, "[a]ll material facts in any party's Statement of Material Facts may be deemed admitted[.]" *See also Jones v. Gerwens*, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) ("[f]acts set forth in the Defendants' Statement of Undisputed Facts which are not controverted[ ] are deemed admitted" pursuant to the Local Rules). However, a moving party's statement of facts need not be accepted as true if "contradicted by [ ] sworn affidavits, or exhibits." *Dan Van Tran v. City of Miami*, No. 05-21206-CIV, 2006 WL 8447801, at *1 (S.D. Fla. July 27, 2006), *aff'd sub nom. Van Tran v. City of Miami*, 261 F. App'x 266 (11th Cir. 2008). Moreover, on summary judgment, the Eleventh Circuit has held that "conclusory allegations without specific supporting facts have no probative value[.]" *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citations omitted). Accordingly, the Court accepts as true only those statements of fact that are non-conclusory and not contradicted by record evidence.

In this premises liability action, Plaintiff alleges she was a customer and lawfully present business invitee at the Hobby Lobby store in Miami, when she slipped and fell on liquid on the floor. *See generally* ECF No. [80]. As of November 16, 2023, RL Miami maintained and operated the common areas of the shopping center known as River Landing, located in Miami. ECF No. [172] ¶ 1. As of that date, Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") had possession and control of the Hobby Lobby store located within River Landing pursuant to the lease agreement between the parties. ECF No. [172] ¶ 2. The Lease Agreement between RL Miami and Hobby Lobby states that Hobby Lobby "shall maintain and repair . . . the interior of the Leased Premises." ECF No. [172] ¶ 4. Thus, on November 16, 2023, by the terms of the lease, Hobby Lobby was responsible for the interior of the Hobby Lobby store, and it was Hobby Lobby's responsibility to keep aisles closed if necessary for customer safety. *Id.* ¶¶ 5, 6.

On the morning of November 16, 2023, prior to the opening of the Hobby Lobby store, Hobby Lobby employees contacted RL Miami's property manager, Edrin Janvier, to request cleaning services after heavy overnight rainfall caused water intrusion inside the store. ECF No. [172] ¶ 7. RL Miami sent a cleaning crew who mopped the affected area of the store. *Id*. After RL Miami's cleaning crew attended to the affected area of the Hobby Lobby store, barriers were placed around the impacted aisles to restrict public access as a precautionary measure. *Id.* ¶ 8. RL Miami's employees left the store after attending to the floors. *Id.* ¶ 17. As a result, RL Miami had no employees in the store at the time of Plaintiff's incident. *Id.*

On November 16, 2023, Plaintiff visited the Hobby Lobby store with her niece, Sara Lanza. *Id.* ¶ 9. While inside the store, Plaintiff claims she stepped on a liquid on the floor, which caused her to slip and fall. *Id.* ¶ 10. While walking through the Hobby Lobby store immediately prior to her fall, Plaintiff did not see water in any part of the store. *Id.* ¶ 11. Plaintiff does not know how

much water was on the floor of the aisle in which she claims she fell, does not know how the water got onto the floor, and does not know when the water got onto the floor. *Id.* ¶¶ 12–14. The water in which Plaintiff slipped and fell was not dirty or sticky. *Id.* ¶ 15.

In October 2024, the instant lawsuit was removed to this Court. ECF No. [1]. Plaintiff's Second Amended Complaint asserts five claims against Hobby Lobby: General Negligence (Count I), Negligent Failure to Maintain (Count II), Negligent Failure to Warn (Count III), Negligent Failure to Correct (Count IV), and Negligent Failure to Inspect (Count V). ECF No. [80].

In May 2026, Hobby Lobby filed its Amended Crossclaim against RL Miami, asserting two claims: Breach of Contract (Indemnification) (Count I) and Common Law Indemnity (Count II). ECF No. [146].

In the Motion, RL Miami argues that no reasonable jury could find it liable in indemnity for Hobby Lobby's potential liability to Plaintiff because: (1) the water on which Plaintiff allegedly slipped did not come through an exterior wall, so RL Miami cannot be at fault under the lease agreement; (2) RL Miami did not have actual or constructive notice of the transitory substance at issue, so it cannot be liable for Plaintiff's alleged incident or, by extension, liable to Hobby Lobby; and (3) Hobby Lobby cannot recover on a claim of common law indemnity because if there was any negligence that caused Plaintiff's incident, Hobby Lobby cannot be without fault. ECF No. [174].

Hobby Lobby responds that the Motion fails because it depends on the Court (1) accepting RL Miami's version of the facts over the sworn testimony in this case; (2) resolving credibility disputes on its own; and (3) drawing inferences in RL Miami's favor. ECF No. [191] at 2. Moreover, the evidence demonstrates RL Miami's "knowledge and responsibility" regarding exterior leaks resulting in water entering the Hobby Lobby store. *Id.*

RL Miami replies that the evidence shows that, on the occasion in question, the floor had been dried of water, and the Hobby Lobby manager periodically checked the area and found no further water intrusion through the wall. ECF No. [194] at 3. Thus, "Hobby Lobby is the only Defendant who could have been negligent by allowing water on the floor from some other source and/or by failing to assure the barriers into potentially affected aisles were maintained in place." *Id.* at 4. Accordingly, summary judgment is appropriate. *Id.* at 5. The Motion is now ripe for review.

## II. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* FED. R. CIV. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (citation omitted); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be

evidence on which a jury could reasonably find for the [non-moving party]." *Liberty Lobby, Inc.*, 477 U.S. at 252.

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## III. DISCUSSION

### A. Whether Hobby Lobby is Precluded from Recovering on an Indemnity Theory Because Hobby Lobby Cannot Be Without Fault

RL Miami argues that common law indemnity is not available to one who is at fault, no matter how slight the fault. ECF No. [174] at 4. Moreover, Hobby Lobby is precluded from

contractual indemnity where the underlying claim results from Hobby Lobby's negligence. Id. at 5. Thus, to the extent Plaintiff may be able to establish some basis for liability in negligence against Hobby Lobby, neither contractual nor common law indemnity can be available to Hobby Lobby. *Id*.

Hobby Lobby responds that all facts in this case relating to "fault" are disputed, and therefore, summary judgment is not warranted. ECF No. [191] at 4. Specifically, Hobby Lobby contends that "RL Miami cannot hold any position that Hobby Lobby was at fault for the incident and therefore give rise to a waiver of recovery on indemnity, while simultaneously maintaining that there was no negligence committed on behalf of any parties." *Id.* at 6.

RL Miami replies that "[t]he record establishes Plaintiff did not slip and fall in water intruding through an exterior wall, leading to the obvious conclusion that Hobby Lobby is the only Defendant who could have been negligent by allowing water on the floor from some other source and/or by failing to assure the barriers into potentially affected aisles were maintained in place." ECF No. [194] at 4. Thus, Hobby Lobby cannot establish that it bears no part in any negligence found to have occurred in this matter. *Id.* at 5.

The Court begins with Hobby Lobby's common law indemnity claim.

Under Florida law, "[a] claim for common law indemnity is one that 'shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable.'" *Florida Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 196 (Fla. 5th DCA 2015) (quoting *Houdaille Indus., Inc. v. Edwards*, 374 So.2d 490, 493 (Fla. 1979)). To state a claim for common law indemnity, a party must allege the following: (1) "that he is without fault," (2) "that another party

is at fault," and (3) "that a special relationship between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party." *Tsafatinos v. Family Dollar Stores of Florida, Inc.*, 116 So. 3d 576, 581 (Fla. 2d DCA 2013) (citations omitted). "Indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be indemnity between joint tortfeasors." *Houdaille Industries, Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979). If both parties are at fault, no matter how slight the fault of the party seeking indemnity, recovery for common law indemnity is precluded. *Id.* at 494. Importantly, "to be wholly without fault does not mean that the party seeking indemnity did not violate a legal duty. Rather, to be wholly without fault, the basis of the claim for indemnity must not arise out of any conduct or act of the party seeking indemnity." *Underwriters at Int. v. All Logistics Grp., Inc.*, 483 F. Supp. 3d 1199, 1208 (S.D. Fla. 2020) (citations omitted).

The Court finds RL Miami's argument without merit. While RL Miami is correct that a party who is at fault cannot state a claim for common law indemnity, and "[t]o the extent Plaintiff may be able to establish some basis for liability in negligence against Hobby Lobby, . . . common law indemnity can[not] be available to Hobby Lobby." ECF No. [174] at 5. Plaintiff's claims against Hobby Lobby—general negligence, failure to maintain, failure to warn, failure to correct, and failure to inspect, *see* ECF No. [80]—focus in part on Hobby Lobby's actions, so if Hobby Lobby is found liable, it may well be that Hobby Lobby is precluded from seeking indemnification from RL Miami, insofar as it will have been at "fault."

However, it is not true that Plaintiff's claims *necessarily* involve direct action by Hobby Lobby—that is, that a finding of liability on a claim necessarily means Hobby Lobby is "at fault." Each of the claims against Hobby Lobby references Hobby Lobby's "non-delegable" duties to

Plaintiff. *See generally* ECF No. [80]. "Holding a particular undertaking to be nondelegable means that responsibility, i.e., ultimate liability, for the proper performance of that undertaking may not be delegated. The term nondelegable does not preclude delegation of the actual performance of the task." *Atl. Coast Dev. Corp. v. Napoleon Steel Contractors*, 385 So. 2d 676, 679 (Fla. 3rd DCA 1980). In that sense, if a jury finds Hobby Lobby liable based on its delegation of responsibilities to RL Miami—and further finds that RL Miami directly breached its duty—Florida law is clear that Hobby Lobby would not be "at fault" for purposes of the common law indemnification analysis, even though it is technically liable. *Id.* at 680.

And based on the factual record here, it is plausible that a jury could draw that conclusion. As the Court concluded in its order on RL Miami's other summary judgment motion, there are live questions in this case regarding control and responsibility, both of which are generally "issues of fact to be resolved by the jury." *Fla. Power & Light Co. v. Morris*, 944 So. 2d 407, 410 (Fla. 4th DCA 2006). A jury could plausibly conclude that RL Miami exercised control and responsibility here for two reasons: (1) RL Miami was responsible for "exterior" repairs, and a jury could find that the alleged dangerous condition is wholly attributable to a defect in the exterior, or (2) RL Miami undertook to correct the "interior" problem in the store by sending in its cleaning team and, in that regard, adopted responsibility over its correction. If a jury finds the latter type of control existed *and* finds that the duty was non-delegable, it could plausibly find Hobby Lobby liable notwithstanding that it has no actual fault.

To be sure, a jury could find otherwise—that is, a jury could find that Hobby Lobby bears some or all of the fault, or it could find Hobby Lobby without fault. In either case, common law indemnification would be unavailable. But where competing inferences regarding control and responsibility are plausible, Hobby Lobby's fault is not beyond dispute. As such, Hobby Lobby is

not—at this stage—precluded from pursuing a common law indemnity claim, so summary judgment on that claim is not warranted.

The Court draws the same conclusion with respect to Hobby Lobby's contractual indemnification claim. "Contractual indemnification 'is an agreement by which the promisor agrees to protect the promisee against loss or damage by reason of liability to a third party.'" *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 643 (Fla. 1999). "In Florida, where a contract for indemnification exists, it is subject to the general rules of contract construction." *Id.*

Here, the relevant portion of the lease agreement between Hobby Lobby and RL Miami states:

> Subject to the waivers set forth in Section-J15, above, Landlord shall indemnify, defend, and hold harmless Tenant from and against any and all Claims resulting from or related to (i) the operation and conduct of Landlord's business in the Shopping Center; or (ii) on account of any condition existing in the Shopping Center under the control of Landlord; or (iii) the gross negligence or willful misconduct of Landlord, its employees, agents or contractors. Notwithstanding the preceding sentence, **Landlord shall not be required to indemnify, defend, or hold harmless Tenant to the extent any Claims result from or relates to Tenant's negligence or Tenant's willful misconduct**.

ECF No. [172-1] ¶ 16.2 (emphasis added).

The next paragraph states, in relevant part:

> [I]f Landlord fails to make a repair to the Common Area or a repair required under Landlord's Maintenance (for example, fails to repair roof leaks, buckled sidewalks, or parking lot potholes), then Landlord shall indemnify, defend, and hold harmless Tenant from end against any and all Claims resulting from or related, entirely or in part, to such failures **(except to the extent a Claim results from or relates to the negligent or willful act or omission of Tenant or its agents, employees or contractors)**.

*Id.* ¶ 16.3 (emphasis added).

RL Miami contends that this language makes clear that contractual indemnity is unavailable to Hobby Lobby. ECF No. [174] at 5. The Court disagrees. As discussed above, there is a plausible

scenario in which Hobby Lobby is technically liable but has taken no negligent act—that is, based on delegation of a non-delegable duty. In such a case, Hobby Lobby could plausibly pursue a claim for contractual indemnification. Thus, summary judgment is not warranted on Hobby Lobby's contractual indemnification claim.

### B. Whether RL Miami Can be Liable for a Transitory Substance in Premises Controlled and Operated by Hobby Lobby as a Tenant in Possession

RL Miami's next argument is that because Hobby Lobby (1) was the tenant in exclusive control and possession of the store; and (2) had full knowledge of the issue with water intrusion after heavy rain—including on the day in question—RL Miami cannot be liable for a transitory substance found within it. ECF No. [174] at 5–8.

Hobby Lobby responds that RL Miami cannot delegate its duty to maintain, and RL Miami was the "only entity in possession and control of the exterior of the premises," so Hobby Lobby had no duty or ability to rectify the problems that gave rise to the water intrusions. ECF No. [191] at 6–7. Where the record supports that a water intrusion led to the water on the floor that caused Plaintiff's alleged incident, "RL Miami is the sole party at fault for same and should be held liable under the pertinent agreement." *Id.* at 7. RL Miami failed to rectify the leak issue despite having notice of it and therefore breached its obligations under the lease agreement by failing to maintain or repair the building's exterior. *Id.* at 8–9.

RL Miami replies that the undisputed evidence shows that the water at issue could not have come from the exterior wall, as (1) the floor had been dried of water; and (2) the Hobby Lobby manager had periodically checked the area and found no further water intrusion through the wall. ECF No. [194] at 2–3. Thus, Hobby Lobby is the only party that could have been negligent. *Id.* at 4.

The Court finds that summary judgment is not warranted on this basis. As an initial matter,

there is a plausible argument that the substance on which Plaintiff allegedly slipped was water from an exterior wall either because (1) water continued to leak in from the exterior wall; or (2) the cleaning crew did not dry the water underneath the store counters, and water proceeded to seep out during the day.

As to the first possibility, it is true that Hobby Lobby's corporate representative testified as follows:

> Q. Did you or Hobby Lobby staff go there after the store opened to see if any further water was coming out of the wall?
> A. Yeah, yeah, we inspected it.
> Q. Okay. And during the time the store was opened that morning was there water continuing to come out of that wall?
> A. No.

ECF No. [172-2] at 86:9–16.

Yet that same representative testified that the reason barricades were put in the area was because "there was a possibility" of additional water intrusion—that is, because he was "not sure if the water was going to still keep coming out[.]" *Id.* at 86:5–8. As the Court explained in its order on RL Miami's other motion for summary judgment, ECF No. [211], that this corporate representative did not personally see additional water coming out of the subject wall in question is not dispositive. The barricades were placed in contemplation of additional water from the same exterior source, and liquid was later located in the vicinity of the initial leak. A jury could reasonably conclude that additional water entered from the exterior wall.

It is also plausible that the additional water came from inadequate drying by the cleaning crew. The same corporate representative testified:

> Now, because we cannot vacuum under the counters. Because these things are huge and heavy and they have a lot of merchandise on top but there is still water under those counters. Now, a little bit of water keeps coming or dripping from under the counters that we were not able to clean because for obvious reasons.

> That's why we decided to close the counters, because we kept seeing water, and we cannot be there you know watching the aisles to see if it's going to drip all day. So, we can -- I cannot have a person on every aisle all day long to see if there is water, additional water coming from under the counters or not. So that's why we decided to close some of those counters with the high chance of that happening.

*Id.* at 35:11–24.

There is record evidence that the water did not come directly from the wall after the cleaning crew left, but the water's origin was nonetheless the leak in the wall. Based on this, a jury could conclude that Plaintiff's injuries were caused by water that came from the leak in the wall and was not sufficiently cleaned by RL Miami's cleaning crew.

And Hobby Lobby's corporate representative ultimately testified:

> So if you're asking me where that water came from that day, I will say 99.9 percent sure that was from the leak on the wall. Why because we had leak, leak water the night before and there was a lot of water that morning and the stores due to the rain the night before.

*Id.* at 68:11–16.

Taken together, there is sufficient record evidence from which a jury could conclude that the water on which Plaintiff allegedly slipped came from the exterior leak.

But even if a jury finds that the water came from the exterior leak, it could simultaneously find that Hobby Lobby delegated a non-delegable responsibility to RL Miami in relying on RL Miami to clean the leak in the interior of the store. That is, even if RL Miami owed no duty to Plaintiff as an owner of the store but was merely one to whom Hobby Lobby's duty was delegated, a jury could find RL Miami factually responsible and Hobby Lobby legally liable. In such a case, common law indemnification and contractual indemnification would be implicated. As a result, summary judgment is not warranted on the basis that Hobby Lobby controlled the premises as a tenant in possession.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that RL Miami's Motion for Summary Judgment, **ECF No. [174]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 6, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record